UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC. | * | CASE NO.: |
| | * | |
| VERSUS | * | |
| | * | JUDGE: |
| El RANCHO SPORTS BAR & GRILL LLC | * | |
| AND EMILIO MARTINEZ-KING | * | |
| | * | MAGISTRATE JUDGE: |

**COMPLAINT**

**To the Honorable Judges and Magistrate Judges of the United States District Court Eastern District of Louisiana:**

NOW INTO COURT, through undersigned counsel, comes J&J Sports Productions, Inc. (J&J), a corporation organized under the laws of the State of California with its principal place of business located at 2380 South Bascom Avenue, Suite 200, Campbell, California 95008 and files its complaint for the following reasons:

**Venue**

1.

Venue is proper in the Eastern District of Louisiana because all of the defendants' actions and omissions occurred at the commercial establishment of El Rancho Sports Bar & Grill, LLC d/b/a El Rancho (El Rancho), 104 Sala Avenue, Westwego, Jefferson Parish, Louisiana 70094. Also the other defendant, Emilio Martinez-King, is a major resident of and domiciled at 1799 Stumpf Blvd., Building 4, Suite 1, Terrytown, Jefferson Parish, Louisiana 70058. Jefferson Parish is located within the territorial jurisdiction of the United States District Court for the Eastern District of Louisiana.

**Jurisdiction**

2.

J&J asserts that jurisdiction of the Court is based upon:

(A) 28 U.S.C. section 1331 because the action presents a question or questions of federal law arising under the Constitution of the United States and other laws of the United States as follows:

(i) The Communications Act of 1934, as amended, Title 47 U.S.C. 605, et seq. ;

(ii) The Cable & Television Consumer Protection and Competition Act of 1992, as amended, Title 47 U.S.C. section 553, et seq., which specifically provides that a civil action may be brought in a United States District Court 553 (c)(1) ; and,

(iii) Title 18 sections 2511 (1) (a), (5) and 2520 (a).

(B) Complete diversity of citizenship and the amount in controversy exceeds the sum of $75,000.00 exclusive of interests and costs as provided in 28 USCA section 1332.

As discussed in detail below, all of the defendants committed certain acts and omissions that violated J&J's rights as the exclusive commercial domestic distributor of the televised fight Program described below. Those acts and omissions consisted of interception, reception, publication, divulgence, display and exhibition of J&J's property within the control of J&J in the State of Louisiana, but without its permission and/or authorization.

3.

**Defendants**

The following persons are the defendants in this complaint:

(a) El Rancho Sports Bar & Grill LLC d/b/a El Rancho (El Rancho), , a Louisiana limited liability company having its registered office located at 104 Sala Avenue, Westwego, Jefferson Parish, Louisiana 70094; and,

(b) Emilio Martinez-King (King), a major resident of and domiciled at 1799 Stumpf Blvd., Building 4, Suite 1, Terrytown, Jefferson Parish, Louisiana 70058.

4.

J&J is informed, believes and alleges that for all times pertinent to the facts of this complaint El Rancho owned, operated, licensed, permitted, had dominion over, controlled, oversaw and managed the commercial establishment doing business as El Rancho Sports Bar & Grill, LLC d/b/a El Rancho located at 104 Sala Avenue, Westwego, Jefferson Parish, Louisiana 70094.

5.

It is believed that El Rancho possessed and possesses a license to sell alcoholic beverages within Jefferson Parish, Louisiana.

6.

Upon information and belief, El Rancho's license described above was in full force and effect at all times pertinent to the facts alleged in this complaint.

7.

Also, upon information and belief, King completed and signed a “Schedule A”, which was filed with the Louisiana Department of Revenue, Office of Alcohol and Tobacco Control as part of the process to acquire the license described above.

8.

The “Schedule A’s” described above were notarized and also certified that King was either the “manager, owner, each partner, each officer, and every stockholder owning more than 5 percent of the capital stock” of El Rancho. Copies of the Schedules will be introduced into evidence at the appropriate time.

9.

Because no one else signed a “Schedule A” as described above, then King was the only natural person who managed, operated and otherwise directed the activities of El Rancho.

10.

King held the position of “Manager” for El Rancho, which is currently a Louisiana limited liability company as shown by the official records of the Secretary of State for the State of Louisiana.

11.

Because El Rancho is a legal entity, it acts through its member and manager. King as the member and manager of El Rancho is also liable for all conduct occurring on the premises of El Rancho including the acts of any person who unlawfully intercepted, published and/or broadcasted the Program described below, which was broadcasted on El Rancho’s premises located at 104 Sala Avenue, Westwego, Jefferson Parish, Louisiana 70094. Additionally, King’s

activities included, but are not limited to, the following:

(a) reconciling all bank accounts for El Rancho;

(b) reviewing inventory of alcoholic beverages on a daily basis;

(c) reviewing the condition and fitness of all equipment on the premises;

(d) collecting all money earned;

(e) paying all accounts payables;

(f) collecting all accounts receivables;

(g) cleaning and maintaining the furniture and fixtures;

(h) attending to any issues concerning televisions sets;

(i) reviewing all upcoming televised sporting events including, boxing, prize fights, martial arts and other similar television programming;

(j) meeting with employees to ensure that all of the items listed in (a) through and including (i) were accomplished on behalf of El Rancho.

12.

J&J is a distributor of closed circuit pay-per view boxing and special events in the United States. Pay-per view means that in order for a customer to view the closed circuit event, it/he/she must pay a fee to J&J, which is/was set by J&J.

13.

El Rancho owns/owned and operates/operated a restaurant and bar that serves/served alcoholic beverages. In order to serve alcoholic beverages, El Rancho and King had to possess a license to sell alcoholic beverages. But because El Rancho is a juridical entity, its physical acts

were accomplished through King, its manager and member.

14.

J&J is informed, believes and alleges that on March 8, 2014, (the night of the Program, which is described below in paragraph 21), El Rancho and King were empowered on behalf of El Rancho and had the right and ability to supervise the business and activities of El Rancho, which included the unlawful interception, publication and/or broadcast of J&J's Program.

15.

J&J is informed, believes and alleges that on March 8, 2014 (the night of the Program, which is described below in paragraph 21), King supervised, directed, facilitated and carried out the activity of unlawfully intercepting, publishing and/or broadcasting J&J's Program, and, among other responsibilities, had the obligation to ensure that the sale of alcoholic beverages upon El Rancho's premises was not in violation of law.

16.

J&J is informed, believes and alleges that on March 8, 2014 (the night of the Program, which is described below in paragraph 21), El Rancho and King specifically and wilfully directed the employees of El Rancho to unlawfully intercept, publish and/or broadcast J&J's Program on El Rancho's premises. Furthermore, the actions of El Rancho's employees were/are directly imputable to El Rancho and King by virtue of their acquiescence, knowledge and acknowledgment that the unlawful interception and broadcast of J&J's Program on El Rancho's premises did occur.

17.

J&J is informed, believes and alleges that on March 8, 2014 (the night of the Program,

which is described below in paragraph 21), El Rancho and King had and possessed an obvious and direct financial interest and commercial advantage and private financial gain in the activities of El Rancho, which included the unlawful interception, broadcast and/or publication of J&J's Program. El Rancho and King met and discussed on a regular basis the financial business of El Rancho, including, but not limited to, cash in the bank, accounts receivables, accounts payables, cash flow and other related monetary matters.

18.

J&J is informed, believes and alleges that the unlawful and willful interception, publication and/or broadcast of J&J's Program by El Rancho resulted in a commercial advantage and private financial gain for El Rancho and King due to the increased profits for El Rancho and/or the opportunity to have earned increased profits. All of this was due to the potential that the broadcast of plaintiff's Program would entice patrons to come to El Rancho to watch the Program and spend money on El Rancho's premises.

19.

J&J is informed, believes and alleges that the unlawful and willful interception, publication and/or broadcast of J&J's Program by El Rancho resulted in a commercial advantage and private financial gain to El Rancho and King due to the increased profits obtained by El Rancho and/or the opportunity to have earned increased profits.

**COUNT I**

**(Violation of Title 47 U.S.C. Section 605 (a), (e) (3) (a) and (e) (4) and 18 U.S.C. section 2511 in conjunction with section 2520)**

20.

J&J incorporates by reference all of the allegations contained in paragraphs 1 through and including 19, as though reproduced here in full.

21.

Pursuant to a valid and enforceable contract, J&J was granted the exclusive nationwide commercial distribution and broadcast (closed-circuit) rights to "Toe to Toe" Saul Alvarez v. Alfredo Angulo Light Middleweight Championship Fight Program, telecast nationwide on Saturday, March 8, 2014 (this included all under-card bouts and fight commentary encompassed in the television broadcast of the event, hereinafter referred to as the Program).

22.

Pursuant to the same valid and enforceable contract, J&J, entered into subsequent sub-licensing agreements with various commercial entities throughout North America, including entities within the State of Louisiana, by which it granted these entities limited sub-licensing rights, specifically the rights to publicly exhibit the Program within their respective commercial establishments in the hospitality industry (i.e., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs and other similar businesses). None of the defendants were granted sub-licensing rights and/or any other right concerning the Program.

23.

As a commercial distributor and licensor of sporting events, including the Program, J&J

expended substantial monies marketing, advertising, promoting, administering, and transmitting the Program to its customers, the commercial entities described above.

24.

With full knowledge that the Program was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, each and every one of the defendants named above, either through direct action or through actions of employees or agents directly imputable to the defendants (as outlined in paragraphs 1 through and including 23 above), did unlawfully intercept, receive, publish, divulge, display, and/or exhibit the Program at the time of its transmission at the defendant, El Rancho's, commercial establishment located at 104 Sala Avenue, Westwego, Jefferson Parish, Louisiana 70094.

25.

The unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition by each of the defendants was done wilfully i.e., each defendant actively desired the effects of the Program on their commercial operation at the address stated above, and for purposes of direct and/or indirect commercial advantage and/or private financial gain. J&J stands ready to present eye-witness testimony and other evidence supporting all allegations made in this complaint.

26.

Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520 prohibit the unauthorized publication or use of communications (such as the transmission of the Program for which J&J had the exclusive distribution rights).

27.

By reason of the actions, omissions and conduct of all of the defendants described above, each of the defendants violated Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520.

28.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 605, et seq, and Title 18 U.S.C. sections 2511 and 2520, J&J has the private right of action pursuant to Title 47 U.S.C. Section 605 and Title 18 U.S.C. sections 2511 and 2520.

29.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 605, et seq, and 18 U.S.C. sections 2511 and 2520, J&J is entitled to the following from each defendant:

(a) Statutory damages for each willful violation in an amount to $100,000.00 pursuant to Title 47 U.S.C. 605 (e)(3)(C)(ii), and also

(b) Recovery of full costs, including reasonable attorney's fees pursuant to Title 47 U.S.C. Section 605(e)(3)(B)(iii).

**COUNT II**

**(Violation of Title 47 U.S.C. Section 553)**

30.

J&J incorporates by reference all of the allegations contained in paragraphs 1 through and including 2 as though reproduced here in full.

31.

The unauthorized interceptions, reception, publication, divulgence, display, and/or exhibition of the Program by the above named defendants was prohibited by Title 47 U.S.C. section 553, et seq.

32.

By reason of the actions, omissions and conduct of all of the defendants described above, each of the defendants violated Title 47 U.S.C. Section 553, et seq.

33.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 553, et seq, J&J has the private right of action pursuant to Title 47 U.S.C. Section 553.

34.

By reason of the actions, omissions and conduct of all of the defendants described above, which resulted in the violation of Title 47 U.S.C. Section 553, et seq, J&J is entitled to the following from each defendant:

(a) Statutory damages for each violation in an amount to $10,000.00 pursuant to Title 47 U.S.C. 553 (c)(3)(A)(ii), and also

(b) Statutory damages for each willful violation in an amount to $50,000.00 pursuant to Title 47 U.S.C. 553 (c)(3)(B), and also

(c) Recovery of full costs, including reasonable attorney's fees pursuant to Title 47 U.S.C. Section 553(c)(2), and also

(d) in the discretion of this Honorable Court, reasonable attorney's

fees, pursuant to Title 47 U.S.C. section 553 (c) (2) ©.

35.

Despite the existence of two separate and distinct federal laws (Title 47 U.S.C. Section 605, et seq. and Title 18 U.S.C. sections 2511 and 2520 AND Title 47 U.S.C. Section 553, et seq), which were enacted at different times, some federal courts have held that a successful plaintiff may only receive damages under one of those laws but not both. J&J asserts its claims under both sets of federal laws, but if the Court should find that the violations stated above occurred under one or the other statutes cited or that J&J may only recover one set of damages, then to that extent, J&J's claims should be considered as alternative claims. J&J does not seek double damages.

THEREFORE, J&J Sports Productions, Inc. prays that each defendant, El Rancho Sports Bar & Grill, LLC d/b/a El Rancho and Emilio Martinez-King be served with a summons and copy of this complaint and required to answer it within the legal delays provided by the Federal Rules of Civil Procedure.

FURTHERMORE, J&J Sports Productions, Inc. prays for judgment in its favor and against each defendant, El Rancho Sports Bar & Grill, LLC d/b/a El Rancho and Emilio Martinez-King for the following sums of money, subject to the jurisprudential rule that double damages are not permitted:

**As to Count I (Violation of Title 47 U.S.C. Section 605 and Title 18 U.S.C. sections 2511 and 2520)**

At J&J's elections in accordance with 47 U.S.C. section (e) (3) (B) and (C) (ii),

(a) statutory damages in the amount of $110,000.00 against the defendants, and each

of them; and,

(b) reasonable attorney's fees as mandated by statute; and,

(c) all costs of suit, including but not limited to filing fees, service of process fees, investigative costs; and,

(d) such other and further relief as this Honorable Court may deem just and proper.

**As to Count II (Violation of Title 47 U.S.C. Section 553 (a) (1), (c)(1), (2), (B), (C), 3 (A), (B))**

(a) statutory damages in the amount of $60,000.00 against the defendants, and each of them; and,

(b) reasonable attorney's fees as may be awarded in the Court's discretion pursuant to statute; and,

(c) all costs of suit, including but not limited to filing fees, service of process fees, investigative costs; and,

(d) such other and further relief as this Honorable Court may deem just and proper.

Respectfully Submitted:
The Berthelot Law Firm, LLC
1660 Thibodeaux Avenue
Baton Rouge, Louisiana 70802
(225) 454-0488—cell phone
1-484-842-8566–facsimile
ronniejberthelot@gmail.com
By: s/Ronnie J. Berthelot
Ronnie J. Berthelot
LSBA bar roll no. 1012
Trial Attorney

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC. | * | CASE NO.: |
| | * | |
| VERSUS | * | |
| | * | JUDGE: |
| El RANCHO SPORTS BAR & GRILL, LLC | * | |
| AND VIRGILIO King | * | |
| | * | MAGISTRATE JUDGE: |

Certificate of Service

I certify that I mailed the foregoing "Complaint" to the following defendants—an attorney is unknown at this time–:

El Rancho Sports Bar & Grill, LLC
104 Sala Avenue
Westwego, Louisiana 70094

Emilio Martinez-King
1799 Stumpf Blvd., Building 4, Suite 1
Terrytown, LA 70058

by placing a copy of the "Civil Cover Sheet" and the "Complaint" in the United States Mail properly addressed and postage pre-paid on February 20, 2017.

s/Ronnie J. Berthelot
Ronnie J. Berthelot